We will move to the second case, United States v. Dupree. Mr. Kahn Okay, Mr. Kahn Good morning. May it please the Court. Section 4B.1.2's controlled substance offense definition plainly covers only offenses that forbid certain conduct. Distributing drugs is among that conduct. Agreements to distribute drugs is not. Therefore, conspiracy offenses are not controlled substance offenses. Starting with the text, as we must, there's three points I'd like to make. First, the word means shows we're dealing with a limited universe of offenses. So the question is, what's in that limited universe? That brings me to my second point. The word prohibit answers that question. The word prohibit, as used in everyday ordinary English, means to forbid by law. That's especially true in the context of criminal laws. So we're dealing with a definition, a limited universe, that deals with offenses that forbid certain conduct. That understanding of prohibit is all the more appropriate, given that the Supreme Court has held that near-possession offenses cannot be controlled substance offenses, and if you adopted the alternative definition of the hinder, it would sweep in a far-ranging list of offenses, including possession offenses. That brings me to my third point, that the Commission knows how to include the word conspiracy in the guidelines when it wants to. It has done so in other guidelines. It has not done so here. Therefore, for all these reasons, the plain text of the controlled substance offense definition plainly excludes conspiracy offenses. There are some cases. I mean, I know there's a wide circuit view on this issue, but there are some cases, including, for example, a Second Circuit opinion called Richardson, in which the Court posits that the commentary is not inconsistent with the text of the guideline. Can you tell me why you think that's mistaken? I'm sorry. Can I get the last part, Your Honor? Sure. The Second Circuit in Richardson explained that, in its view, the commentary was not inconsistent with the text of the guideline, and I just want your thoughts on that perspective. Well, Your Honor, I have two responses to that. The application note 1 here cannot stand for two separate reasons. One, Kaiser clarified that a court cannot defer to the commentary unless the guideline itself is genuinely ambiguous. Here we're dealing with a guideline that's plain on its face, so there's no occasion to resort to the commentary. It simply means what it says, and the court must apply it. Second, even putting Kaiser aside, under a pre-Kaiser understanding of Stinson, this application note is plainly erroneous and inconsistent with the text. For all the reasons I just mentioned, the text here is a plain and comprehensive definition that excludes conspiracy offenses. The only way you can get to this alternate definition of the hinder is through the application note. But the text by itself excludes conspiracy offenses. It's not consistent with it. And we know it excludes conspiracy offenses for the textual reasons I previously mentioned, including the ordinary meaning of prohibit, which means to forbid by law, and that ordinary meaning applies here given the context of this definition. Robertson, is it your position that Kaiser overruled or abrogated Stinson? Not at all, Your Honor. In Stinson, the court held that commentary provisions that interpret the text should be treated like an agency's interpretation of its own rule. It then quoted and cited the Seminole Rock standard. All Kaiser did was clarify how that standard applies. So in Stinson, they went through a number of comparisons to try to explain what deference they were going to give to guidelines. They started by rejecting Chevron, right? Yes, Your Honor. And do you remember what they said about rejecting Chevron? I do, Your Honor. What did they say? They said that — well, they said a few things, Your Honor. I'm guessing you're referring to the last sentence of that paragraph where they say that the commentary that provides concrete guidance in practice to even unambiguous guidelines. That's pretty different than what the court said in Kaiser, isn't it? It is, Your Honor. In fact, it's exactly contrary to what the Supreme Court said in Kaiser. It's not, Your Honor. It's not at all. That sentence talks about a specific type of commentary, commentary that provides concrete guidance about how a guideline applies in practice. But what the decision in Stinson was addressing is a different type of commentary provision, a commentary provision that interprets or explains a guideline. In the very next paragraph, after they discuss Chevron deference, when they're adopting the Seminole Rock, you'll see in parentheses, they interpret a commentary like the one at issue here. That's a different type of commentary provision than a commentary provision that provides concrete guidance about how it applies in practice. How is this not exactly that? It says, it explains what the term controlled substance offense means. It says it applies to three different types of offenses. Your Honor, the commentary provision here is interpreting or explaining the guideline provision. A concrete, a commentary provision that provides concrete guidance about how a guideline applies in practice, and you see this throughout the guidelines, is defendant A does this, therefore this guideline provision applies. It's almost like examples. That's concrete guidance. But what we're dealing with in Kaiser and Stinson is interpretive commentary. It's not this commentary that explains the guidelines. It's this commentary that explains the guidelines or. No, that says and. Commentary that explains the guidelines and commentary that provides unambiguous guidance about how it applies to unambiguous guidelines in practice. Unambiguous guidelines are to be applied in practice. But that term, the unambiguous guideline part, applies only to that part of the sentence that's dealing with how commentary provisions apply to unambiguous guidelines in practice. It doesn't apply to the first part. We're talking about two different types of commentary provisions. The part about the ambiguous guidelines only applies to the commentary provisions, commentary provisions that provide concrete guidance about how they apply in practice. What was the exact commentary that was at issue in Stinson? It was whether or not possession of a gun is a crime of violence. In other words, there was a definition of crime of violence, and there they said this kind of offense is not included within what we have defined, even though without that, it would have been included in what's defined, right? But, Your Honor, I think that also helps us, because they acknowledge in Stinson that that was an interpretive provision, just like the one here is an interpretive provision. Right. They're exactly the same. So Stinson makes clear that interpretive provisions, like the one at issue here, are entitled to be treated like an agency's interpretation of its own rule, and therefore, the Seminole Rock standard applies. But, Your Honor. So let's get to the our analogy. So you and I have talked about the Chevron stuff. So then it goes on to say, we'll use the our analogy. But what does it say about that analogy? Does it say we're applying our deference in this context, or it was an our because our didn't happen then, but Seminole Rock deference in this context? Your Honor, what it says is that although it's not a precise analogy, we believe an agency's interpretation of its own rule should be treated like the commentary interpreting a guideline should be treated like the agency's interpretation of its own rule. Why do you think the analogy isn't precise? Why do you think the Court said that? Well, they tell us why they say it in the opinion. And that's because the guidelines are submitted to Congress every six months and an agency's rule is not. Well, there's some other differences, it seems to me, between agency rules and guidelines. Do agency rules have the force of law to them? In other words, are they themselves law? Your Honor, I understand you're getting to the fact that they are. No, no. I'm asking you a question. I want you to answer it for me. Okay. Your Honor, when they use the force and effect of law, what they mean in that context is whether or not the guidelines bind by rule. Do agency rules? A regular agency rule. The FDA makes — Do they have the force and effect of law, Your Honor? They do or do not? They do. In contravention of a statute? No, Your Honor. Okay. They regulate — your point is they regulate primary conduct, and the guidelines never have. Even when they were mandatory, what the Supreme Court held in Mastretto was that part of the reason the guidelines were constitutional is because they did not regulate primary conduct, right? That's right, Your Honor. So it's never been based on the guidelines having force and effect of law. Stinson tells us why it adopted Seminole Rock Deference. It does so for very specific reasons, including that they're acting pursuant to a congressional delegation of authority. Well, it doesn't say — it doesn't ever use the term adopt. It's not adopting. It's not adopt. You're right. It's not adopting, but it's — It uses an analogy that itself it says is not precise, right? It says it's not precise, but nevertheless, we should treat commentary provisions, interpreting the commentary, like an agency's interpretation of its own rule. Is the Sentencing Commission like an executive agency? It is not an executive agency. It's in the judicial branch, an independent body in the judicial branch. How is that difference — how is that difference relevant, if at all, to the deference afforded to guidelines, for example, versus the deference afforded to administrative rules? For purposes here, there is no difference, Your Honor. And I just want to be clear about something, because I know we're talking a lot about Kaiser and whether Kaiser applies. We win even if you put Kaiser aside. I just want to make that clear, because I think it's important if you do have doubts about Kaiser. We win under a pre-Kaiser understanding. Well, my question to you is — and I understand that, and let's explore that. But my concern is we're saying that Kaiser applies here, but Kaiser seems very inconsistent with Stinson, it seems to me. I don't see how you can read them together, especially in its complete rejection of Chevron deference. And if that's the case, how could we, our Court, either sitting en banc or as a panel, have overruled what the Supreme Court told us applies not just in the context of the guidelines in general, but with regard to this very guideline, the same guideline? Your Honor, what Stinson said was although the guidelines are different and they're not a precisely correct analogy, we hold they should be treated the same way. They cite Seminole Rock. They quote the standard. Kaiser has clarified — They didn't quote the exact Seminole Rock standard, did they? Because what the Court quoted in Stinson was what Justice Kagan called the character of Seminole Rock, right? That's right, Your Honor. Right. So it doesn't even quote Seminole Rock. It quotes the character of Seminole Rock. It quotes the standard from Seminole Rock. No, it doesn't, because the standard in Seminole Rock is clear. It's if the meaning is vague or ambiguous, then you apply the deference associated, right? Your Honor, the standard in Seminole Rock, as I understand it, is that if the interpretation is for a deference unless it's plainly erroneous or inconsistent with the agency's rule. Didn't it require — didn't Seminole Rock say that the meaning had to be — that there had to be some ambiguity or some lack of clarity with regard to the meaning before that deference applied? That's what the Court clarified in Kaiser. No, that's what it quoted from Seminole Rock to say. And what it said is some of our decisions have been a character of what that is, right? Isn't that what Justice Kagan said? Justice Kagan said if you read that language in a vacuum, in isolation, by itself, it suggests a caricature of deference, but you have to now understand what those words mean in light of Kaiser. And since it adopts a standard, they apply it to the guidelines, but they're saying an agency's interpretation of its own rule should be treated like — the commentary provision interpreting a guideline should be treated like an agency's interpretation of its own rule. It cites Seminole Rock, and it's clearly adopting that standard, although it doesn't use the word adopt. I would maintain it is adopting a Seminole Rock standard. Kaiser has clarified that standard, but again, I don't want to get lost on it because I only have a few minutes remaining here. Let's put Kaiser aside and let's go to your fallback argument. Okay. So — which is that you win even without Kaiser. All roads lead to the text. Okay. What did Stimson say? So we're putting Kaiser aside. Stimson is the law, not unadorned by Kaiser. Well, again, I understand, Your Honor. Yes, you said you win under Stimson. There is the law, but this is — we win even without Kaiser. Okay. So let's put Kaiser aside. What did the Supreme Court say about incorporating revisions to the guidelines? The Court said that you can — in Stimson, the Court said you can incorporate revisions to the guidelines even through amended commentary if the commentary — if the guideline will bear the construction of the amended commentary. Right. So you agree, as I understand in your brief, you concede that reading prohibit to be hinder as opposed to forbid is a plausible reading. You don't think it's the right reading. You say that under a plain meaning we would get to forbid. But don't you concede in brief that it's a plausible reading to read it that way? Your Honor, in the brief we say if you look at that word in isolation, it could carry that definition. In the context here, there's only one meaning of prohibit. You can only get to this hinder definition through the commentaries. And there's — So didn't the Supreme Court say in Stimson that one way to incorporate revisions to the guidelines is through amending the commentary, quote, if the guidelines which the commentary interprets will bear the construction? Yeah, but Your Honor — Not if it's reasonable, not if it's ambiguous, but only if it'll bear it. Your Honor, you can't know whether or not a commentary provision is plainly erroneous or inconsistent with a guideline without knowing what that guideline means by itself. So here we're looking at the guideline, and the word prohibit in the context of this definition can only carry one meaning, and that is — If Stimson says that you can apply commentary even where the guideline's unambiguous — so it concedes even where it's unambiguous, the guideline will be binding and it says that you can amend the guidelines through commentary as long as the commentary will bear the construction. Your Honor, I want to go back. I disagree that Stimson has that broad statement about unambiguous guidelines. I think he's talking about a very specific type of commentary provision, the commentary provision that's really at issue in Kaiser and Stimson is commentary interpreting a guideline, going back to the sentence about bearing the construction. Again, you can't know whether it bears the construction. You can't know whether or not a commentary provision is plainly erroneous or inconsistent without knowing what that guideline means first. Well, let's look at specifically what happened in Stimson. In Stimson, there was a definition of crime of violence. Every court, as I understand it, had read that definition to include felon in possession. And then in 1992, the commission says, no, no, no, no, no, you cannot have felon in possession. How is that not inconsistent with a plain reading of what every court to have read it understood the definition of crime of violence to mean? Your Honor, the crime of violence standing by itself is an ambiguous term. Here, we're dealing with a very different and specific situation. In 4A, I think my, in 4B1.2, we have a Isn't there a simple answer to that question? And that is, a crime of violence would involve some kind of violent conduct, whereas a felon in possession might just be someone who has criminal history, who possesses a firearm, and has not committed any violence in committing that offense. I think that's right, Your Honor. And I also think that, standing alone, without a definition attached to it, the term crime of violence could be ambiguous. It could bear that construction. Here, we're dealing with a term of art that has a definition in the text that's plain and comprehensive. And now you have a commentary provision seeking to add it. It cannot bear that construction when you look at the guideline text by itself. I see my time has expired. If the Court has no further questions on this issue. Well, are there any other questions? Can I just nose in here for a minute to ask? Yes. And you can give me a short answer. But I just want to sort of test the limits of your principle. You sort of set the controlled substances offense sort of language against the crime of violence language, noting that crime of violence uses the phrase, or the term attempt, in a way that controlled substances offense does not, perhaps to suggest that inchoate offenses might be included in the one and not in the other. However, the commentary goes further to discuss not only attempt but also aiding and abetting and conspiracy. On your position, is the guideline invalid with respect to the crime of violence prong of this insofar as it refers to anything but attempt? Are conspiracies and aiding and abetting out under your interpretation of the guideline? So if I'm understanding the question correctly, I think you have to look at each of these in isolation. I think conspiracies and attempts are their own unique beasts. They're inchoate offenses. Aiding and abetting is an alternative theory of liability. So perhaps the plain text of the guideline captures that alternative theory of liability. The fact that the elements clause includes attempts, they're not capturing attempt offenses per se, but they're capturing offenses to have the attempted use of force. But we point to that language just to show the commission knows how to include the word attempt, the word conspiracy when it wants to. It did so in this guideline. It's done so in other guidelines. They didn't do it here. They used a plain and comprehensive definition with limiting language like means and prohibits instead of includes or related to. And therefore, the application note cannot add to it under a pre-Kaiser understanding of Stinson or as we also maintain under the proper understanding of Stinson now clarified by Kaiser. Okay. Mr. Kahn. Ms. Tiffin. Good morning. May it please the Court, Don Tiffin on behalf of the United States. Mr. DuPree's position both begins and ends with giving the word prohibits an unreasonably narrow and hyper technical meaning. He uses only the meaning for bids, but there are multiple meanings for the word prohibits, and all of them should be given equal rank in this analysis. That's what this Court has done in the past, and that is what the Supreme Court has done. Prohibits. But why is that so? I mean, there are a lot of words that have multiple meanings, some more narrow, some more broad, and it's not always the case, I think, that you use the broadest meaning all the time, right? There's a choice involved in figuring out which definition of a term is going to govern in a certain context, right? Yes. You have to — it's not just that there's a broad definition that we should automatically latch on to the broad definition. You have to explain why that's the right choice on the definitional side. That's correct. And part of that analysis is looking at the context of the guideline, the context of the language. Here, we have plenty of context to know what the Commission was trying to do, that it was trying to include in co-ed offenses in the guideline. So, what's the limit of that position? I mean, if your position is that prohibit means hinder, I can think of a thousand crimes that would hinder certain offenses. I mean, a gun offense would hinder the sort of controlled substances offense that we're talking about here, right? I mean, jaywalking might hinder it. Well, that wouldn't be the logical conclusion with regard to this guideline. This guideline talks about a conduct that prohibits offenses of manufacturing, of distribution, et cetera, of controlled drug offenses. Okay, so fine. So, but why would pick your federal firearms offense not hinder that crime, a possession distribution offense, any less than a conspiracy offense? Well, Your Honor, we'd have to take it guideline by guideline. The important thing here is that there was a directive by Congress to the Sentencing Commission to punish within the guidelines, set parameters to punish career offenders at or near the maximum. And the Congress also, by virtue of Section 846, has stated very clearly its intent to treat not just those that complete the substantive controlled drug offenses, but the ones who complete the conspiracies, the one who commit conspiracies, even agree to commit these controlled drug offenses. They want those defendants treated equally with the people who have completed the substantive offenses. So, again, that's part of the context that we have to look at for this guideline. We know that's what Congress intended, and Congress gave the commission authority to create this guideline to get that effect in the sentencing process. If the Sentencing Commission had gone completely the other way, your position would be that we would defer to that commentary as well? So, if the Sentencing Commission said, this does not include conspiracy, aiding and abetting, attempt, or the like, we would have to defer to that too? In other words, the deference goes both ways? I don't think so. You're saying the only way of reading the guideline itself is to include conspiracies and other inchoate offenses? I'm saying both of those things. The first part of your question is I think we would dispute the commentary at that point because, again, considering context and under government. I don't think they're the same. I don't think those two things are the same. I think if your argument is, and I don't want to speak for, you know, for my colleague Judge Luck, but I think that what he was trying to get at is that even when language seems relatively clear, the Sentencing Commission can do something which goes a little bit in a different direction. And so my question to you is, what do you think the government's position would be if the Sentencing Commission had gone the other way? In other words, if the commentary said it does not include any inchoate offenses, you say we'd be required to defer to that too? Or then would you be taking Mr. Dupree's position, which is that the commentary is inconsistent with the guideline? Our starting position in that scenario would be the same starting position it is in this one, which is to look at the, regardless of the commentary, look at the guideline in and of itself. And we would argue, as we're arguing today, that the term prohibits is inclusive of multiple meanings, and we must give effect to those meanings. So that the commission could not take a narrower view of prohibit? I believe our position would be that, Your Honor, that we would have to look at the It simply can't be right. I mean, if there are two reasonable ways to look at this, and I think even you concede that there are two ways, you've argued why the broader way is appropriate as opposed to narrow. But if there are two ways the commission has to be allowed to choose, I mean, just take Stinson. In Stinson, the road taken there was the narrow road, which is that the crime of violence statute, even though every court of appeals had interpreted it to mean felon in possession statute, the commission said, no, it does not mean that. And the Supreme Court there said is that was binding. It has to be the case here if the hypothetical that Judge Jordan says is right. Otherwise, I don't understand the coherence of your position. Well, let me back up, if I may, Your Honor. So what we're saying to begin with is we're looking at this guideline, and we believe, regardless of how many meanings you give to the term prohibits, that inchoate offenses are included in that, plainly. But if there's a disagreement about that or if the court's not sure, then we would transition into a Kaiser deference analysis. We would go through all of these steps. We would find a genuine ambiguity. And in the end, the court— But the point of Judge Jordan's question is if it were the other way, if the commission had gone the other way, then you would have to defer to that. If the court doesn't find that the guideline plainly includes inchoate offenses irrespective of the commentary, this court can do that. This court can look at the guideline in isolation and say this is the reasonable interpretation using traditional tools of statutory construction. But again, if it does that, if it exhausts those tools and says I'm not really sure Mr. Dupree's interpretation makes sense, the United States interpretation makes sense, then we have a roadmap from Kaiser on what to do. Let me ask you this. Was this commentary adopted simultaneously with the guideline and submitted for notice and comment and submitted then to Congress together with the guideline itself? This commentary is not in its original form, very close to it, and very soon afterwards it was submitted to Congress. But just as an aside, the commentary is always submitted to Congress. Any amendments to the commentary— But Stinson, I think, suggested otherwise. But my own experience is that that's right. That's correct. So Congress always sees any amendments to the commentary and policy statements in addition to the substance of the guidelines themselves. And it's also open to notice and comment from the public before it even arrives at Congress. I don't want to utilize the Court's time unnecessarily. I do have a few other points that I want to make, but I'm happy to entertain any further questions from the Court. Let me go back to Judge Newsom's question. If we accept the Hinder definition, that seems to me that would certainly sweep in simple possession. But that would be contrary to the Supreme Court's decision in Salinas, which said simple possession of a controlled substance is not a controlled substance offense under the guidelines. What's your response to that? I see the Court's point that that would be a logical extension at some point. But, again, there are multiple meanings, and we can utilize all of them. One of those is also prevents. So we have hinders, we have forbids, we have prevents. And we're not talking about specific actions in terms of this conduct for the manufacturer, the distribution, et cetera. So if we use, for instance, the term prevents by preventing two people from agreeing to commit a drug, let's say, manufacturing offense, we are necessarily preventing the offense itself, those two people from committing that offense. I'm not sure if that answers the Court's question to its satisfaction. I don't know how it's any different. I mean, simple possession, if that is prohibited, would also prevent distribution, wouldn't it? In some cases, Your Honor. I don't know that we should read it that broadly. It would certainly hinder the possession with intent to manufacture. That's a possibility, Your Honor. You're using prohibit, it seems to me, in a practical, common-sense, you know, man-on-the-street, woman-on-the-street sense, whereas they're using it in the legal sense. What does the law prohibit? What does the law forbid in a legal sense? And so they read the nouns, manufacture, import, distribution, or dispensing, as the legal prohibitions, and they say, unless you have those legal prohibitions, you're out. You read prohibits in a broader way, in a way that is not tied to the legal description, but just something which, in the normal sequence of events, makes it harder to commit one of these other offenses. And just to tag on, the difficulty, I think, is that once you jump off the legal prohibition platform and now you're in practical sort of walking-around-sense land, I don't know where that stops. I have no idea. I don't think it stops before you get to Judge Jill Pryor's question, and I don't frankly think it stops before you get to lots of other crimes. I understand the question. I think what Mr. Dupree keeps forgetting here in his reliance on his meaning for the word prohibits is that we can't effectuate any meaning for that term unless and until we consider context. Context for the guideline is something that has been missing in these decisions that have come out of the other circuits that have espoused Mr. Dupree's view. There has been a rather superficial analysis with what prohibits means. It gives it one singular and unreasonably narrow meaning of forbids and then shuts the door on any other arguments. But, I mean, you can make that argument about all the other decisions going out the other way. The Second Circuit decision in Richardson that I asked your colleague about has one line with a reference to the Oxford English Dictionary with one definition, the broadest, and it stops. That may be right or it may be wrong, but it's the same analysis. It's a choice. You have to choose. It is a choice. It's a choice for this Court in consideration of the context, and that's why we've asked the Court as a starting point to consider the guideline in isolation and that it plainly includes in co-ed offenses when we consider the context, the history of the guideline itself, really the very purpose of the commission and what Congress directed it to do all of those decades ago. But, again, if there's uncertainty there, if it could cut both ways, then it's proper for this Court to move into a deference analysis. Can it even cut both ways? Because how does that second meaning fit here where the subject is a criminal offense? Because isn't it more natural to say that a criminal offense forbids by law certain activity rather than that it hinders it? Because you wouldn't say that a criminal offense hinders someone from engaging in the very conduct that they're accused of, the very activity that they're convicted of, right? How does hindering someone from, say, gun possession, make them commit that crime? Well, again, we're talking about the precedent conduct in terms of a conspiracy. So if we're saying you're not allowed to agree to do this offense, in many cases it's going to follow that, well, in every case, I should say, theoretically, the underlying conduct would also be forbidden or hindered or prevented. But does the conspiracy hinder you from prohibiting that offense, or does it actually move you toward committing that offense? I mean, hinder means, like, you hinder me from moving to that, you know, you stop me from going over there. But that's different than prohibiting. I'm prohibited from going to that corner. These are various meanings, and we think that the Court should consider each of them. These questions are warranted. This is something that the Court needs to consider when it's determining what a reasonable interpretation of this guideline is. Does it reasonably include incoate offenses, or doesn't it? But we do think, even though our starting position, again, is that it does plainly include these given the context of the guideline. Again, if the Court doesn't think that's the case, then let's continue to move forward, and let's do a Kaiser analysis. Let's consider whether this is a genuine ambiguity, that both positions are reasonable, and we're not quite sure what the commission intended when it used this precise language. And then let's continue going through the Kaiser steps to get to this ultimate conclusion of whether deference is warranted to the commentary. So you agree that the Kaiser standard applies. That is, we only defer if the statute is ambiguous. Genuinely ambiguous. That's correct. And, of course, there are a few more steps to move through to get to that end point. But, yes, we believe that Kaiser is the prevailing standard. It's a logical extension of Stinson. But I think going back to Judge Luck's questioning earlier, I think it's important to say that even if this Court decided that Kaiser is not the prevailing standard and that Stinson is, that is another avenue that this Court could traverse and still arrive at the same destination, which is that the commentary at issue here should be afforded deference because it's not inconsistent with the guideline itself. Why is it not inconsistent? Explain why Mr. Dupree's argument that he would win even under the Stinson standard are plainly erroneous or inconsistent. Why is that not right? Well, it's much the same as the analysis for our other arguments. We're considering the context and history of the guideline. And because we know that defendants who conspire to commit a controlled drug offense statutorily should be punished the same as those who commit the substantive or complete the substantive offense, really. But that argument rests on your interpretation of the word prohibits. Well, that's true, Your Honor. That's true. But, again, we think that that's reasonable. Is it inconsistent to say if the term controlled substance offense means X, Y, and Z and a commentary says it also means A, B, and C? Are those things inconsistent with each other? I don't know, Your Honor. I think it really depends on what the context of the guideline was. It's our poll star that we can have it. Why? Forget this case. You know, Apple means X, Y, and Z, and the commentary says Apple also means A and B. Are those things inconsistent? There are certainly situations where that could be inconsistent, yes. Why is that? I don't think that's the case here. Why in that hypothetical case could it be inconsistent? Well, I mean, it's a mere possibility. And it would depend on that history of that guideline. It would depend on how it was amended through the years. It may even depend on how the commentary itself evolved. How are additions to a definition inconsistent with the definition? I'm just confused by the position that you're taking that that could be inconsistent. Well, I don't consider, if Your Honor, if I'm extrapolating appropriately, this case doesn't involve an addition to the guideline. It's an interpretation. Well, let's assume it is. Let's assume I don't agree with you that prohibits means what you say it means. I agree completely with Mr. Dupree's position. So the guideline says it means distribution, intent to possess with intent to distribute, manufacture, that same list. And the commentary says it also means these other things. Is that inconsistent? It's possible, Your Honor. We'd have to go through the tools of statutory construction. Let's go through it with me. How is it inconsistent? I'm sorry, Your Honor. I think I may be, or you may be losing me, rather. I'm not losing you. So if you had a hypothetical. I'm certain I'm unclear. Let's say there is a word, whatever that word is, that says it means X, Y, and Z. And a commentary, whatever deference you give that, says it also means A, B, and C. Are those things inconsistent? Whatever the term is, whatever the definition is, are those things inconsistent with each other? No, I don't believe they would be. Why not? Well, because, again, it's interpreting something within the guideline. It's interpretive. It doesn't conflict because it doesn't say. What would be inconsistent? So if, let's say, the commentary said the term, whatever that term is, means X, Y, and Z, and then the commentary says that same term does not mean X, that would be inconsistent, right? I think that would be inconsistent. That would be. I want to follow up on my question because I think I wasn't very clear, and it's really hanging me up, so I want to give you a chance to respond. As I read the guideline, it says the term controlled substance offense means an offense under federal or state law punishable by imprisonment for a term exceeding one year that prohibits the manufacture, import, export, etc. If we say that hinders the manufacture, import, export, distribution, or dispensing of a controlled substance, isn't that really the opposite of what you think a guideline would get at? If it hinders those things, then wouldn't that offense keep the person from doing those things? It just doesn't make grammatical sense to me. Can you tell me why I'm wrong? Well, yes, and, Your Honor, I'm sorry. I respectfully have to disagree that it doesn't make sense because, again, hindering somebody from doing something, in this case a conspiracy, a prohibition on conspiracy, would hinder somebody from creating, excuse me, completing that substantive offense. That seems plain to me. If the hindering is successful, though. I mean, I think, you know, implicit in Judge Grant's question is that hindering isn't necessarily, is not necessarily successful in prohibition, and that's the problem. If we can choose two definitions, essentially forbids by law or hinders. You can forbid by law the manufacture of something. That means one thing. If you hinder the manufacture of something, that means entirely another thing, right? I think there's some overlap, and, Your Honors, Judge Rosenbaum, your point is well taken also, that hinder doesn't have a sense of permanence in its effect, but it doesn't have to. We don't have to give it that meaning in order for it to fall within the confines of the guideline language. But consistent with what Judge Grant is asking, at least as I understand it, you wouldn't have a conviction if the hindering were not successful, meaning it had turned into a prohibition. So doesn't it have to be prohibit? I mean, why isn't it, not all hindering is prohibiting. I don't think so, because prohibit in and of itself, when you forbid somebody to do something, it does not by any measure mean that that person is not going to do that thing. What it says is I don't want you to do this thing. You are not allowed to do this thing. And so when we look at it in those terms, I think hinders and forbids are really on more equal footing than maybe apparent. Okay. Ms. Tiffin, we have your argument. We've allowed you to go over, but you've been answering questions from the Court. Mr. Kahn, you've saved five minutes. There's really only one major point I'd like to make, and that is that the plain meaning of the word prohibit in the context of this definition is to forbid by law. The word prohibit, as used in everyday, ordinary discourse, means to forbid. That's especially true when we're talking about criminal laws. And as Judge Pryor made the point, the alternative definition of hinder would be inconsistent with the Salinas decision. Let me ask you about Judge Luck's example that he gave, where he said the commentary might not be inconsistent with the guideline. And what he said was if the guideline says X, Y, Z, and the commentary says not X, that's inconsistent. I think we all agree about that. But what about the word means, which you mentioned at the beginning of your argument? Isn't that narrower than a word like includes, which might include other things in addition? Yes, Your Honor, and it took me to the very next point I wanted to make, which is that the word means shows we're dealing with a limited universe of offenses. If the commission wanted to have a broader definition, it could have used the word includes. It could have used a word like involving or relating to instead of prohibit. These are narrower words of means and prohibit. And because we're dealing with a plain and comprehensive definition, which is a very specific situation here in the guidelines, where you have a plain and comprehensive definition in the text, an application note purporting to add to it is inconsistent with the text itself. So in the end, all roads lead back to the text. Stinson dealt with means also, right, a definition that included means. Excuse me? Stinson also dealt with a definition that said means, not includes, right? Even Stinson, I'm not 100 percent about this, but I believe in Stinson they were dealing with the term crime of violence in the text. Right. And then the commentary was defining that term. Right, just like here. So in the text, just so I'm clear, the 1992 guideline, which is the one at issue there, said the term crime of violence means, and then it defined it, right? That's exactly like here, right? To be honest, Your Honor, I don't remember the 1992 guidelines. I'm looking at it, so just trust me on it. Okay. So can you say it one more time? It's the term crime of violence means, and then it, you know, went on to define it, just like here, right? That's what we have here, right? Yes, Your Honor. And then the commentary said it doesn't mean this other thing, right, that everyone said was included in it, right? Okay. So I guess my question is, if it used the term means there, and that means is narrow and it has to mean that thing, then why would the commentary be controlling if it added or changed what that thing meant? I think we need both these things. We need the word means, but we also need to know that prohibit means forbid, which are two narrow words, and they work together. Here, in this context, we're dealing with limited universal offenses that forbid certain conduct. Isn't there a different answer to that question or that line of questions? I certainly will. Which is that Stinson involved a relatively similar procedural context, and the word means to introduce a definition, right, by examples. What the Sentencing Commission did in that case was to exclude, right, not to add. That's true, Your Honor. And when you have a means and not the word includes, you can more reasonably think that the universe is limited. And so when the Sentencing Commission acts in a way that keeps that universe limited, its commentary is entitled to deference and not inconsistent with the text of the guideline. But the argument would run counter in a situation like this one, where you use the word means, again, a similarly limited universe, and what the Sentencing Commission is doing is not keeping the universe limited, but instead expanding it. I agree, Your Honor. I agree 100 percent. And in the end, all roads lead back to the text, whether under Stinson or under Kaiser's clarification of Stinson, Application Note 1 is unenforceable here. The controlled substance offense definition plainly covers only offenses that forbid certain conduct, and conspiracies and agreements are not in that conduct. Therefore, Mr. Dupree respectfully requests this Court answer the question presented that the commission of a conspiracy offense cannot constitute a controlled substance offense. Thank you. All right. We will be in recess until a quarter till. All rise.